JOHN T. CLARKE, Appellant, *v.* CARL F. BOKER, Respondent.

First Department, November 8, 1918.

**Contract — agreement for commissions on sale of securities construed.**

A so-called option to purchase from defendant certain stocks, bonds and receiver's certificates of a corporation owned by the defendant and a claim against it upon which the plaintiff was to receive commissions examined, and *held*, insufficient as a basis for the recovery of commissions on a sale of the corporation's property, assets and effects on foreclosure.

SMITH and SHEARN, JJ., dissented, with opinion.

APPEAL by the plaintiff, John T. Clarke, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 25th day of February, 1918, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*George W. Bristol* of counsel [*Harold B. Elgar* with him on the brief], for the appellant.

*Henry M. Stevenson* of counsel [*Edgar C. Beecroft,* attorney], for the respondent.

CLARKE, P. J.:

This is an action to recover commissions based upon a contract in writing which is entitled, " Option to Purchase " and provides as follows:

" For value received I hereby give to John T. Clarke an option to purchase within 30 days from May 13th, 1915, all of the bonds, receiver's certificates, certificates of stock and claims I hold in or against the Iron Mountain Tunnel Company, upon the following terms and conditions:

" $151,700 First Mortgage Bonds at $111,500.00

" $6,133.34 Receiver's Certificates at $6,133.34

" 70,880 Shares stock in Iron Mountain Tunnel Company, par value 708,800 and claims I hold against the Iron Mountain Tunnel Company at $2,800.00.

" In case the said Clarke exercises the above option by buying the bonds together with the Receiver's certificates, he has the right to decide whether he will also buy the shares of stock and claim, or not, under his option on same.

" If said Clarke exercises above option, I agree to pay him a commission of 10% on such amount as may be paid by him or his assigns in purchase of bonds and shares but not on Receiver's certificates. If he or his assigns purchase Receiver's certificates, I am to receive the sum of $6,133.34 net for same, without commission.

" Payments:

" Payments for the bonds and receiver's certificates to be as follows:

" Thirty thousand ($30,000.00) within ten days after purchase has been made under this option for the bonds and receiver's certificates; and $2,800.00 within ten days for the shares of stock after their assignment and of my claim under this option; the balance of the purchase price to be paid in three equal payments in three, six and nine months, without interest.   *   *   *

" In case I am offered a sufficient higher price for all of the

bonds and receiver's certificates above specified in the Iron Mountain Tunnel Company, than the price specified in this option, I will have the right, after May 20 and after three days' notice having been given to the said John T. Clarke, to cancel this option, but am to pay said Clarke, out of such sum as I may receive, a sum equal to five per cent. of amount specified in this option, and in that event I am also to pay a fair compensation for the services of any engineer and his assistants that Mr. Clarke or his assigns or customers engages to examine the mining properties of the Iron Mountain Tunnel Company, but in no event is the charge against me for the said services of said engineer and assistants to exceed the sum of $1,500.

" If the parties to whom said John T. Clarke offers my bonds and receiver's certificates and shares of stock in the Iron Mountain Tunnel Company do not purchase these bonds, certificates and shares under this option, but later on, within six months acquire my interest in the property I agree to pay to said Clarke a commission of 10% on the amount I receive for my interests in said property as above specified, but this commission of 10% will not be on a sale I may make after June 13th, 1915, to a party who has had a certain mining engineer by name of B. F. Haley, of Wallace, Idaho, during May, 1915, examine this property, it  *  *  * being also understood that if Haley's client purchases the property prior to June 13, 1915, I am to pay Clarke a commission of 5% on sale price of my interest.

" This option will be void unless a mining engineer of good standing is sent by said Clarke, his assigns or customers and said engineer reaches the property of the Iron Mountain Tunnel Company on or before May 20th, 1915. Said examination being for the purpose of assisting said Clarke, his assigns or customers in the sale of the mining property or of my holdings in the said Iron Mountain Tunnel Company, as above specified."

The subject of the contemplated sale upon which the plaintiff would be entitled to commissions were first mortgage bonds of the company at the specified price of $111,500, receiver's certificates at their face value upon which no com-

mission was to be charged, certain shares of the company and the claim against it for $2,800. It is not claimed that the plaintiff procured a purchaser for the bonds, the certificates, the shares or the claim against the company, but that he did interest the Federal Mining and Smelting Company in the property of the Iron Mountain Tunnel Company and that as a result thereof it bought on July 18, 1915, at a foreclosure sale the property, assets and effects of said Iron Mountain Tunnel Company for the sum of $110,000, and the complaint sets up that the defendant has been paid the full face value of the receiver's certificates and that a dividend has been declared upon said bonds amounting to $10.8167 on each $100 par value thereof, upon which plaintiff demands his commission. That is to say, upon a contract on which plaintiff was to sell the defendant's bonds for $111,500 plaintiff claims a commission because, upon the foreclosure sale of the whole property, not of the defendant, but of the company, some of whose bonds defendant held he received his *pro rata* share amounting to about $16,000.

In my opinion the complaint was properly dismissed as no reasonable interpretation could stretch the individual contract to dispose of the defendant's bonds to cover a purchase of the tunnel company's property, assets and effects at a foreclosure sale thereof.

The judgment appealed from should, therefore, be affirmed, with costs to the respondent.

DOWLING and PAGE, JJ., concurred; SMITH and SHEARN, JJ., dissented.

SMITH, J. (dissenting):

The defendant owned stock and bonds and receiver's certificates of the Iron Mountain Tunnel Company. This property was in the hands of a receiver and was to be sold by the receiver. Plaintiff was acquainted with the officers of the American Smelting Company; the Federal Mining and Smelting Company was a subsidiary corporation of the American Smelting Company. He evidently had been talking with the defendant about selling the defendant's interest in this tunnel company to this smelting company; thereupon, a writing was executed between them, which is Exhibit 1. It

is spoken of as an option to purchase. It is really a brokerage contract; it provides that the plaintiff or his assigns may have an option to purchase within thirty days all of the stock or the bonds and the receiver's certificates at certain sums, and then provides: " If the parties to whom said John T. Clarke offers my bonds and receiver's certificates and shares of stock in the Iron Mountain Tunnel Company do not purchase these bonds, certificates and shares under this option, but later on, within six months acquire my interest in the property, I agree to pay to said Clarke a commission of 10% on the amount I receive for my interests in said property as above specified." The smelting company did not purchase the stock or the bonds or the receiver's certificates, but did purchase the property upon the receiver's sale within the six months specified. The defendant, for his interest in the property, got some $16,000; the plaintiff claims ten per cent of this sum, or about $1,600, under this contract. The trial court has held that the plaintiff is entitled to nothing, apparently because he did not sell the stock and bonds and receiver's certificates of the defendant. I am unable, however, to agree with this conclusion. The provision in the contract is alternative. If plaintiff should sell the stock or bonds or certificates of defendant he was to have his commission. If, however, he shall not sell the stock, bonds and certificates, but the parties to whom plaintiff offers the same shall " acquire my [defendant's] interest in the property," plaintiff was to have a ten per cent commission on the amount received " for my interests in said property." Now, that property was in the hands of the receiver for sale, it could only be purchased from the receiver, so that the contract must have contemplated the purchase of the property from the receiver. It was not provided that that purchase should be upon a private sale any more than upon a public sale by the receiver. It is argued that any one had the right to purchase upon public sale and that the contract could not have intended to give to the plaintiff the right to ten per cent in case the purchase happened to be made by some one to whom he had offered the property. This is fully answered by the fact that it was provided in the contract that Clarke or his assigns or customers should send a mining engineer to examine the property, which was in fact done,

and it was upon the report of this mining engineer that this purchase was made by the smelting company at this public sale. The defendant wanted Clarke to get the smelting company interested in this property and to purchase the property itself if they would not purchase his securities, and the contract seems to me to be plain to give to Clarke his ten per cent upon the amounts the defendant received from the property if the smelting company, Clarke's customer, did in fact acquire the property. This construction also is borne out by what follows in the contract, " but this commission of 10% will not be on a sale I may make after June 13th, 1915, to a party who has had a certain mining engineer by name of B. F. Haley, of Wallace, Idaho, during May, 1915, examine this property, it * * * being also understood that if Haley's client *purchases the property* prior to June 13, 1915, I am to pay Clarke a commission of 5% on *sale price of my interest.*" This provision indicates that when a sale of " defendant's interest " is spoken of the reference is to the acquisition of such interest either directly or by a purchase of the property. Moreover, the provision of the contract that Clarke or his assigns or customers shall send an engineer to examine the property in part reads: " Said examination being for the purpose of assisting said Clarke, his assigns or customers in *the sale of the mining property or of my holdings,*" etc. I can only read the contract to give to the plaintiff his commission if the sale be either of defendant's stock, bonds and certificates or of the property itself which would thereby pass title to " defendant's interest " in the property.

I think the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

SHEARN, J., concurred.

Judgment affirmed, with costs.